IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLIFFORD L. JACKSON, JR., )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>MIKE McDONALD, Warden, )<br>)<br>Respondent. )<br>_____ ) | No. C 08-4974 MMC (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY; DIRECTIONS TO CLERK** |

Before the Court is the above-titled petition for a writ of habeas corpus, filed by petitioner Clifford L. Jackson, Jr., pursuant to 28 U.S.C. § 2254, challenging the validity of a judgment obtained against him in state court. Respondent has filed an answer to the petition, and petitioner has filed a traverse.[1]

---

[1] Petitioner initially named Lydia C. Hense, former warden of North Kern State Prison, as the respondent in this action. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Mike McDonald, the current warden of High Desert State Prison, where petitioner currently is incarcerated, is hereby SUBSTITUTED as respondent in place of petitioner's

# I. PROCEDURAL HISTORY

In 2006, a Monterey County jury found petitioner guilty of possession of a controlled substance, public intoxication, and two counts of battery on a peace officer. (Ex. 2 at 260-69.)[2] Petitioner waived a jury trial as to allegations of three prior strike convictions, and the court found the allegations true. (Id. at 260-63.) On October 19, 2006, the trial court sentenced petitioner to 25 years to life in state prison. (Id. at 326-27.)

In a reasoned opinion, the California Court of Appeal affirmed petitioner's conviction. (Ex. 6.) The California Supreme Court summarily denied the petition for review. (Ex. 8.)

Petitioner also filed a state habeas petition in the California Supreme Court, which was summarily denied.[3]

On October 30, 2008, petitioner filed the instant petition for a writ of habeas corpus.

# II. STATEMENT OF FACTS

The California Court of Appeal found the facts underlying petitioner's conviction to be as follows:

*The Prosecution's Case*

City of Seaside Police Officer Joshua Parker went to Judith Moore's Mendocino Street home around 6:00 a.m. on July 6, 2004, in response to a 911 call. Moore told Parker that [petitioner] was "out of control" and that she wanted him to leave her home. [Petitioner] did not appear intoxicated and was cooperative. Parker stood by as [petitioner] gathered some belongings and left.

Around 11:30 p.m. on July 6, 2004, Officer Gabriel Anderson was dispatched to the area of Mendocino and Mingo streets due to a report of loud music and

---

prior custodian.

[2] All references herein to exhibits are to exhibits submitted by respondent in support of the Answer.

[3] See California Appellate Courts' on-line Register of Actions at: http://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=0&doc_id=1912226&doc_no=S174190.

possible drug activity in the area.[4] As he approached the area, he determined that the loud music was coming from a parked gray Pontiac. The Pontiac's engine was running and [petitioner], the sole occupant of the car, was asleep in the driver's seat. Anderson knocked on the car window and yelled, "Wake up." He told the other officers there about his prior contact with [petitioner]. Officer Anderson and Moore yelled at [petitioner] to again try to wake him up. Anderson was able to open the driver's side door after reaching into the Pontiac through the open rear driver's side window. He smelled alcohol and again yelled at [petitioner]. [Petitioner] finally woke up. He seemed disoriented, his speech was slurred and his eyes were red. He got out of the car and staggered when he stood up. He walked to the back of the car and leaned over it as though he was going to be searched. The officers thought that [petitioner] was intoxicated.

Officer Anderson had [petitioner] stand back up and asked if he could search [petitioner]. [Petitioner] said, " 'Search me if you want.' " Anderson started to pat-search [petitioner] for weapons, but [petitioner] started swaying from side to side and his knees buckled, so Anderson could not complete the search. Anderson arrested [petitioner] for being drunk in public and Officer Parker helped Anderson handcuff [petitioner]. [Petitioner] started yelling as though he was hurt or in pain. Anderson did not think [petitioner] looked hurt, so he led [petitioner] back to Parker's patrol car. As they neared the car [petitioner] yelled " 'Anderson,' " and spat on the right side of Anderson's face. Some spittle also landed on the windshield of Parker's patrol car. Anderson and Parker took [petitioner] to the trunk of the patrol car and bent him over it. Anderson quickly searched [petitioner] for weapons and, when he did not find any, then put [petitioner] inside the patrol car. [Petitioner] continued to yell.

Officer Parker transported [petitioner] to the police station. After securing his gun, Parker took [petitioner] inside the booking area and conducted a booking search to inventory [petitioner's] property. In [petitioner's] left front pocket Parker found a rock of what appeared to be crack cocaine. The rock later tested positive for cocaine and was .29 grams, a usable amount.

After securing [petitioner's] Pontiac, Officer Anderson drove to the police station. When he arrived, [petitioner] had already been searched and placed in the booking cell. [Petitioner] was still yelling. Officer Parker showed Anderson a rock of cocaine that had been removed from [petitioner's] pocket.

Officer Anderson put [petitioner] in the intoxication cell. He got some medical paperwork and asked [petitioner] some routine booking medical questions through the window of the cell. [Petitioner] responded, " 'Officer Anderson, I'll spit on you again.' " As Anderson was filling out the paperwork, [petitioner] spat on his forehead through the cell window.

*The Defense Case*

Michelle Chioino testified that she filed a written complaint of excessive force

---

[4] The trial record reflects this second dispatch actually occurred on July 7, 2004, not July 6, 2004. (See Ex. 1 at 1765-66.)

3

against Officer Anderson. When she was in the last trimester of her pregnancy, she was a passenger in a car that was stopped. Over a loud speaker she was directed to get out of the car, put her hands up, and walk back to the patrol car. She did so, and was told to turn around. Anderson put her arms behind her back and handcuffed her. When she explained that the handcuffs were too tight and asked why she was being detained, he shoved her into the patrol car. She suffered cramping, hemorrhaging, and stress. On cross-examination Chioino testified that neither her hemorrhaging nor Anderson are mentioned anywhere in her written complaint. She also testified that she has pending armed robbery charges.

(Ex. 6 at 2-5) (footnote omitted).

### III.  DISCUSSION

A.   Standard of Review

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412-13 (2000). Additionally, habeas relief is warranted only if the constitutional error at issue had a "substantial and injurious effect on the verdict." Penry v. Johnson, 532 U.S. 782, 796 (2001) (internal citation omitted).

A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." Williams, 529 U.S. at 405-06. "Under the 'unreasonable application' clause, a federal habeas court

1  may grant the writ if the state court identifies the correct governing legal principle from [the
2  Supreme] Court's decisions but unreasonably applies that principle to the facts of the
3  prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because
4  that court concludes in its independent judgment that the relevant state-court decision applied
5  clearly established federal law erroneously or incorrectly. Rather, that application must also
6  be unreasonable." Id. at 411.

7  Section 2254(d)(1) restricts the source of clearly established law to the Supreme
8  Court's jurisprudence. "[C]learly established Federal law, as determined by the Supreme
9  Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme]
10 Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at
11 412. "A federal court may not overrule a state court for simply holding a view different from
12 its own, when the precedent from [the Supreme Court] is, at best, ambiguous." Mitchell v.
13 Esparza, 540 U.S. 12, 17 (2003).

14 Here, the California Supreme Court summarily denied petitioner's petition for review.
15 (Ex. 8.) The Court of Appeal, in its opinion on direct review, addressed two of the three
16 claims petitioner raises in the instant petition. (See Ex. 6.) The Court of Appeal thus was the
17 highest court to have reviewed those claims in a reasoned decision, and, as to those claims, it
18 is the Court of Appeal's decision that this Court reviews herein. See Ylst v. Nunnemaker,
19 501 U.S. 797, 803-04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005).
20 As to the claims for which there is no reasoned opinion available, the United States Supreme
21 Court has recently clarified that a federal habeas court, in applying the review provisions of
22 28 U.S.C. § 2254(d), looks to the result reached by the highest state court, and the absence of
23 reasoning does not prevent application of the standard of review set forth in § 2254(d). See
24 Harrington v. Richter, 131 S.Ct. 770, 784-85 (2011).

25 B.   Petitioner's Claims

26 Petitioner claims: (1) the trial court improperly refused to strike petitioner's prior
27 convictions for sentencing purposes; (2) his 25-years-to-life sentence constituted cruel and
28 unusual punishment in violation of the Eighth Amendment; and (3) his trial counsel provided

5

ineffective assistance. The Court addresses each claim in turn.

1.  Sentencing Error

Petitioner claims the trial court "abused its discretion" in refusing to strike his prior strike offenses pursuant to People v. Superior Court (Romero), 13 Cal. 4th 497 (1996). (Pet. Supplement Doc. at 5-12.) In Romero, the California Supreme Court interpreted the language of California Penal Code section 1385(a) and held a trial court may, on its own motion or motion of a party, strike prior felony conviction allegations in a case brought under California's Three Strikes Law.

Under AEDPA, this Court may entertain a petition for habeas relief on behalf of a California state inmate "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Here, the petition, with respect to petitioner's sentencing claim, makes no reference to any federal law or constitutional provision. Rather, petitioner alleges error solely under state law. Federal habeas relief is unavailable for violations of state law or for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Further, it is well-established that federal courts must defer to a state court's interpretation of state sentencing laws. See Bueno v. Hallahan, 988 F.2d 86, 88 (9th Cir. 1993). "Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief." Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994). Petitioner fails to show "fundamental unfairness." As the Court of Appeal noted, the sentencing court relied on the violent nature of petitioner's three prior strike convictions, all of which involved forcible rape. (Ex. 6 at 10-11; Ex. 1 at 2266-28.) While acknowledging the prior strike convictions were "somewhat remote in time," having occurred in 1978 and 1981, the sentencing court found such remoteness did not weigh in petitioner's favor given petitioner's "extensive and fairly lengthy" criminal record in the intervening years. (Id.) Such record included battery on a former cohabitant, sales of a controlled substance, and resisting arrest. (Id.) The sentencing court found petitioner's current offense constituted his seventh felony conviction since 1981. (Id.) In sum, the record

supports the Court of Appeal's finding that petitioner did not fall outside the Three Strikes Law.

Accordingly, petitioner is not entitled to federal habeas relief on this claim.

2. <u>Cruel and Unusual Punishment</u>

Petitioner claims his 25-years-to-life sentence constituted cruel and unusual punishment in violation of the Eighth Amendment. (Pet. Supplement Doc. at 13-24.)

The Eighth Amendment provides there "shall not be . . . cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." <u>Ewing v. California</u>, 538 U.S. 11, 23 (2003) (quoting <u>Harmelin v. Michigan</u>, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)); <u>see also</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 72 (2003) ("A gross disproportionality principle is applicable to sentences for terms of years."). Based on these principles, the United States Supreme Court has adopted the following test for determining whether a specific sentence is grossly disproportionate:

> A court must begin by comparing the gravity of the offense and the severity of the sentence. In the *rare* case in which this threshold comparison . . . leads to an inference of gross disproportionality the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions. If this comparative analysis validates an initial judgment that the sentence is grossly disproportionate, the sentence is cruel and unusual.

<u>Graham v. Florida</u>, 130 S.Ct. 2011, 2022 (2010) (emphasis added) (internal quotations and citations omitted).

In reviewing a sentence under a recidivist statute, a federal court looks not only at whether the sentence is justified by the current offense, but also by the individual's criminal history. See <u>Ramirez v. Castro</u>, 365 F.3d 755, 768 (9th Cir. 2004). That is, a court may take into account "the government's interest not only in punishing the offense of conviction, but also its interest 'in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law.'" <u>United States v. Bland</u>, 961 F.2d 123, 129 (9th Cir. 1992) (quoting

Rummel v. Estelle, 445 U.S. 263, 276 (1980)).  The Eighth Amendment does not preclude a state from making "a judgment that protecting the public safety requires incapacitating criminals who have already been convicted of at least one serious or violent crime."  See Ewing, 538 U.S. at 25, 29-30.

In that regard, the decision in Taylor v. Lewis, 460 F.3d 1093 (9th Cir. 2006), is instructive.  In Taylor, the Ninth Circuit upheld a Three Strikes sentence of 25-years-to-life for possession of .036 grams of cocaine base where the petitioner, Taylor, had two violent prior convictions.  Id.  The court rejected Taylor's claim that his current felony was a "nonviolent, passive, victimless crime," giving deference to the state's view that "*[p]ossession, use*, and distribution of illegal drugs represent 'one of the greatest problems affecting the health and welfare of our population.'"  Id. at 1097, 1099 (emphasis in original) (citations omitted).  Here, petitioner argues his current offense was nonviolent, the .29 grams of cocaine in his possession was small, and his spitting on the police officer did not result in physical injury.  (Pet. Supplement Doc. at 19.)  Petitioner's argument is unavailing.  Indeed, petitioner's current offense is more serious than Taylor's.  Not only is the amount of cocaine greater, but the offense involved a greater degree of violence, as petitioner spat on an officer twice and struggled with officers, forcing them to subdue him.

While petitioner acknowledges the United States Supreme Court upheld sentences under the Three Strikes Law in both Ewing, 538 U.S. 11 (2003), and Andrade, 538 U.S. 63 (2003),[5] petitioner, citing Reyes v. Brown, 399 F.3d 964 (9th Cir. 2005), and Ramirez v. Castro, 365 F.3d 755 (9th Cir. 2004), claims federal courts of appeals subsequently have found Three Strikes sentences cruel and unusual.  (Pet. Supplement Doc. at 16-17.)  The cases on which petitioner relies, however, are distinguishable.  In Reyes, the Ninth Circuit

---

[5] In Andrade, the Supreme Court upheld a Three Strikes sentence of two consecutive twenty-five-years-to-life terms for a recidivist convicted of stealing approximately $150 worth of videotapes.  Andrade, 538 U.S. at 66, 77.  Andrade had a criminal history of petty theft, burglary, and transportation of marijuana.  Id. at 66.  Similarly, in Ewing, the Supreme Court upheld a Three Strikes sentence of twenty-five-years-to-life for a recidivist convicted of felony grand theft of three golf clubs worth approximately $1,200.  Ewing, 538 U.S. at 18-19, 30-31.  Ewing had a criminal history of theft, battery, burglary, possession of drug paraphernalia, illegal firearm possession, robbery, and trespass.  Id. at 18-19.

1 remanded the case to the district court for further proceedings because the record did not
2 reveal whether Reyes's prior strike conviction for armed robbery was a "crime against a
3 person" or otherwise involved violence, which would have justified his Three Strikes
4 sentence. 399 F.3d at 968-69. Here, unlike Reyes, the record is clear that petitioner's prior
5 strike convictions for forcible rape involved violence. In Ramirez, the Ninth Circuit held a
6 Three Strikes sentence of 25-years-to-life was grossly disproportionate to the crime because
7 Ramirez's two prior strike convictions for second-degree robbery were "nonviolent"
8 shoplifting crimes, and his current offense of petty theft ordinarily would have constituted a
9 misdemeanor but for a prior theft-related conviction. 365 F.3d at 768. Here, by contrast, the
10 record shows petitioner's three prior strike convictions were sufficiently violent to warrant
11 sentencing under the Three Strikes Law.

Given the gravity of the current offense, petitioner's extensive criminal record, and the deference accorded to state recidivist statutes, petitioner fails to raise "an inference of gross disproportionality," see Graham, 130 S.Ct. at 2022, and, consequently, consideration of comparative factors is unnecessary, see id.

Accordingly, petitioner is not entitled to habeas relief on this claim.

### 3. Ineffective Assistance of Counsel

Petitioner claims his trial counsel was constitutionally ineffective for failing to call petitioner's girlfriend, Judith Moore ("Moore"), as a witness. (Pet. at 6 .) Petitioner asserts Moore would have "refut[ed] a 911-call, which allegedly brought the police to the alleged criminal activity," and therefore "there was no probable cause for the police to even come upon [p]etitioner." (Id.)

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but "effective" assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). In order to prevail on a Sixth Amendment claim based on ineffective assistance of counsel, a petitioner must make a sufficient showing as to two components, specifically, such petitioner must show (1) counsel's performance was deficient, i.e., it fell below an "objective standard of

9

reasonableness" under prevailing professional norms; and (2) petitioner suffered prejudice, i.e., "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 687-88, 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

A federal habeas court considering an ineffective assistance claim need not address the prejudice prong of the Strickland test "if the petitioner cannot even establish incompetence under the first prong." Siripongs v. Calderon, 133 F.3d 732, 737 (9th Cir. 1998). Conversely, the court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Strickland, 466 U.S. at 697.

Here, petitioner fails to satisfy either prong of the Strickland test. Nothing in the record indicates Moore made the call that led to petitioner's arrest on July 7, 2004, i.e., the call that summoned officers to petitioner's car, where he was found asleep and intoxicated. Rather, Officer Anderson testified that, on July 7, 2004, at around 11:30 p.m., he received a report that a citizen had called 911, complaining about loud music and possible drug activity. (Ex. 1 at 1765-66.) Officer Anderson testified he did not know who made that 911 call. (Id. at 1806-07.)

Petitioner's confusion appears to stem from the fact that Officer Parker testified he was dispatched to Moore's house to investigate a "911 hang up" on the previous morning, July 6, 2004. (Ex. 1 at 1858.) As set forth in Officer Parker's testimony, when Officer Parker arrived at Moore's house, Moore told him she wanted petitioner to leave her house (id. at 1858-59) and petitioner, who did not appear intoxicated, left cooperatively (id. at 1860). None of the underlying charges arose from that earlier incident.

Given the absence of any testimony or other evidence offered by the prosecution to show Moore made the call that led to petitioner's arrest, petitioner's claim fails, as, even assuming Moore could have been called to the stand to deny making the July 7, 2004 call, such denial would not have altered the state of the evidence. Counsel cannot be deemed deficient for declining to call a witness to make an irrelevant point. See Lord v. Wood, 184

10

1  F.3d 1083, 1095 (Ninth Cir. 1999) ("Few decisions a lawyer makes draw so heavily on
2  professional judgment as whether or not to proffer a witness at trial.")

3  Accordingly, petitioner is not entitled to habeas relief on this claim.

4  C. <u>Appealability</u>

5  The federal rules governing habeas cases brought by state prisoners require a district
6  court that issues an order denying a habeas petition to either grant or deny therein a
7  certificate of appealability. <u>See</u> Rules Governing § 2254 Cases, Rule 11(a).

8  A judge shall grant a certificate of appealability "only if the applicant has made a
9  substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the
10 certificate must indicate which issues satisfy this standard, <u>id.</u> § 2253(c)(3). "Where a
11 district court has rejected the constitutional claims on the merits, the showing required to
12 satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists
13 would find the district court's assessment of the constitutional claims debatable or wrong."
14 <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).

15 Here, petitioner has not made such a showing, and, accordingly, a certificate of
16 appealability will be denied.

17 **CONCLUSION**

18 For the reasons stated above, the petition for a writ of habeas corpus is hereby
19 DENIED, and a certificate of appealability is hereby DENIED.

20 The Clerk shall enter judgment in favor of respondent and close the file.

21 Additionally, the Clerk is directed to substitute Warden Mike McDonald on the docket
22 as the respondent in this action.

23 IT IS SO ORDERED.

24 DATED: February 17, 2012

25 _____
MAXINE M. CHESNEY
26 United States District Judge

27

28